Filed 8/6/26  P. v. Glenn CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E086568 |
| v. | (Super.Ct.No. FSB10843) |
| OTIS RAY GLENN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Smith, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed with directions.

Otis Ray Glenn in pro.per.; and Jo Pastore, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

In this *Anders/Wende* matter,[1] defendant and appellant Otis Ray Glenn appeals from the trial court's resentencing decision after recalling his sentence under Penal Code section 1172.1. (All further undesignated statutory references are to this code.) Defendant's original aggregate sentence imposed in 1997 on two dozen felony counts, including 22 robbery counts, exceeded 600 years to life, which the trial court reduced at resentencing to 50 years to life, consecutive to an eight year determinate term. The court at resentencing was the same trial judge who imposed defendant's original sentence. The trial court declined at resentencing to strike under section 1385 either of the two prior strike allegations found true under the Three Strikes law (see §§ 667, 1170.12) at defendant's original trial.

On appeal, our independent review of the record and the law discloses no issues of arguable merit on which to request briefing by the parties regarding defendant's resentencing. (See *People v. Johnson* (1981) 123 Cal.App.3d 106, 109 ["an arguable issue" requires "a reasonable potential for success" on appeal].) Nor, as we briefly explain, do we see any potential merit in defendant's personal supplemental brief on appeal claiming ineffective assistance of counsel at his resentencing hearing. We therefore affirm the trial court's resentencing decision, with directions to make a correction to the record. We direct the trial court on remittitur to amend and forward to the Department of Corrections and Rehabilitation (CDCR) the abstract of judgment to

---

[1] *Anders v. California* (1967) 386 U.S. 738; *People v. Wende* (1979) 25 Cal.3d 436.

reflect more than 10,000 days of actual credit and conduct credit that the trial court determined defendant was entitled to as of the resentencing date.

BACKGROUND

In June 1997, a jury convicted defendant of kidnapping (§ 207, subd. (a)), attempted robbery (§§ 664, 211), and 22 counts of robbery (§ 211), all arising from an armed robbery defendant perpetrated with multiple accomplices against customers and employees at a restaurant in April 1996.  The jury found defendant personally used a firearm in committing each offense.  (§ 12022.5, subd. (a).)  Defendant's two prior strike convictions were also for robbery, in two separate instances approximately seven years earlier, when defendant was in his early twenties.  The probation report for defendant's original sentencing hearing indicated an unreformed prior juvenile history of serious offenses, and a pattern of reoffending upon release from custody, including that his new robbery offenses were committed less than a year after his most recent release from prison.

The probation report also included victim accounts of the robbery reflecting that it was brutal, prolonged, terrifying, and violent, involving discharge of a shotgun and brandishing of firearms at victims with threats to kill them.  Many of the victims remained traumatized, several were children, and one older victim suffered a nonfatal heart attack the night of the robbery.  The probation report also noted defendant's attempt to escape jail pending the trial, by threatening harm to another inmate's family and impersonating the inmate.

3

The trial court at defendant's original sentencing declined the probation department's recommended term of 840 years. Instead, the court imposed the indeterminate 600-year term mentioned *ante*, consisting of consecutive 25-years-to-life terms on each of defendant's 24 felony counts, plus a consecutive 96-year determinate term based on four-year firearm enhancements on each count.

A sentence modification in 2021 reduced defendant's sentence to 575 years to life with a consecutive 100-year determinate term.

In May 2024, defendant filed an in propria persona letter request with the trial court seeking recall of his sentence and resentencing under Assembly Bill No. 600 (2023-2024 Reg Sess.) (Stats. 2023, ch. 446), codified in section 1172.1. The trial court appointed counsel for defendant and, after several continuances, in May 2025 defense counsel filed a resentencing brief on defendant's behalf. The brief included as exhibits almost a dozen Certificates of Achievement or Completion defendant earned in prison, along with two laudatory "Chronos" from prison staff.

Defendant also included a letter to the trial court stating he was a changed person after 29 years of incarceration, during which he spent "a great deal of time working on my character defects and mental health issues" and progressed "from security level IV down to a level II prison." There, his placement in the Mental Health Services Delivery System the last 19 years had benefitted him "greatly," including by fostering insight and aiding him "in achieving laudatory chronos and in reducing my write-ups." Defendant said he saw "the impact our crimes have had on others" and "what redemption looks

4

like," which included "not being afraid to ask for . . . help" and "being a leader in the community" to "build[] it up," rather than "just a follower."

The district attorney opposed defendant's resentencing request, including because section 1172.1 does not provide for recall and resentencing at a defendant's request. (§ 1172.1, subd. (c).)

The trial court declined the People's request to take the matter off calendar and confirmed with the parties at a hearing its "discretion, basically on its own" motion, to recall and resentence defendant. (See § 1172.1, subd. (a)(1).) The court acknowledged that defendant's existing sentence was the equivalent of life without the possibility of parole. After hearing argument by the parties, including concerning defendant's age (59 years old) and medical treatment for "severe diabetes," the trial court decided that, "in retrospect, in looking at it at this point in time, considering no one was killed, no one was seriously injured, and given the issues of the defendant's health at this time, I'm going to grant the request to resentence" defendant.

The court resentenced defendant to the 58-years-to-life aggregate term noted above, consisting of consecutive terms of 25 years to life for the first two counts—one for kidnapping and the other for one of the robberies—plus consecutive determinate four-year terms for use of a firearm on those two counts. The court reimposed the 25-years-to-life terms and four-year firearm enhancement terms on 21 of the remaining counts, but ran them concurrently, and also reimposed a four-year term for the attempted robbery count, as it had done so in 2021, but made that term concurrent this time.

5

The court expressly noted its "discretion to strike strikes," but rejected defendant's request to do so. The court concluded that dismissing the strikes would be "inappropriate" where defendant had two separate prior convictions for robbery "and then participated in this robbery involving multiple victims." Over defendant's objection that, with the strikes, "the resulting sentence still remains a life exposure," the trial court answered that it had "consider[ed] that," but concluded a life term with the possibility of parole was appropriate. The court noted the revised sentence "does significantly . . . reduce his sentence, and it may put him in a position of being eligible for parole."

The court calculated that as of the resentencing date defendant was entitled to credit against his sentence for 10,666 actual days in custody, plus 70 days of presentence conduct credit, which the court ordered CDCR to augment based on defendant's conduct in prison.

DEFENDANT'S APPEAL AND OUR REVIEW

Following entry of the trial court's resentencing order, defendant appealed. This court appointed appellate counsel on defendant's behalf. Counsel's review of the record and legal research uncovered no arguable issues to raise on appeal, including after consultation with Appellate Defenders, Inc. In reaching that conclusion, counsel noted a potential question for our independent review: Did the trial court abuse its discretion in declining to strike either or both of defendant's prior strike convictions?

Having independently reviewed the record for potential error, we are satisfied defendant's attorney has fully complied with the responsibilities of counsel and there is

6

no issue of arguable merit on appeal requiring briefing by the parties.  (*People v. Kelly* (2006) 40 Cal.4th 106, 126; *Wende, supra*, 25 Cal.3d at pp. 441-442.)

Defendant also filed his own supplemental brief.  Defendant asserts he received ineffective assistance of counsel (IAC) in several respects at the resentencing hearing.  A successful IAC claim requires two showings.  First, the defendant must establish that counsel's representation fell below an objective standard of reasonableness.  Second, the defendant must show the allegedly deficient representation was prejudicial; in other words that there is a reasonable probability that but for counsel's failings, the result would have been more favorable.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 694-695; *In re Neely* (1993) 6 Cal.4th 901, 908.)  In considering an IAC claim, a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  (*Strickland*, at p. 697; *People v. Fairbanks* (1997) 16 Cal.4th 1223, 1241 (*Fairbanks*.)

Defendant's IAC claims fail without need for merits briefing by the parties because we discern no possibility he can make the requisite showings of both deficient performance and prejudice on any of his specific contentions.

For instance, defendant alleges deficient performance because his attorney did not "request[] a continuance" to "research[] all applicable ameliorative changes in 'statutory authority or case law' " or to "conduct[] 'a fairly thorough review of trial record[s] for

7

any [California Racial Justice Act (CRJA)] violation[s].' " But these broad assertions of general tactics or strategies counsel might have employed are not enough to suggest deficient lawyering. IAC claims often are not suitable for review on appeal precisely because it may be that counsel investigated a course of action but found it wanting for reasons not apparent on the record. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.) That is why habeas proceedings are usually more appropriate for IAC claims: so that a factual predicate can be developed as to what a particular tactic or approach might have shown. (*Ibid.*) Without that predicate, defendant's claims necessarily independently fail for lack of any demonstrated prejudice from the alleged deficient performance. (*Fairbanks*, *supra*, 16 Cal.4th at p. 1241.)

Similarly unavailing are defendant's IAC claims based on what defendant characterizes as counsel's "meager and inadequate" argument for the trial court to strike his strikes under section 1385, counsel's failure to "adequately argue" for striking the firearm enhancements, or to more thoroughly emphasize defendant's prison reform. Again, in failing to state anything specific that counsel might have argued to obtain a better outcome, defendant fails to make a case for deficient performance or prejudice. In particular, we see no likelihood whatsoever that the court would have dismissed defendant's strikes, where the court twice expressly rejected defendant's invitation. Nor do we see any possibility the court would have stricken altogether or further reduced the firearm enhancements, given the gun use was central to the terror defendant inflicted. We also presume the trial court considered defendant's rehabilitative efforts in prison (see

*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [lower court ruling presumed correct]); indeed, it is certain the court did so, in light of the substantial sentence reduction the court granted.  Defendant's IAC claims are all without merit.

Nevertheless, we do note on our own motion that the trial court's abstract of judgment following resentencing does not include the court's custody credits ruling. Accordingly, while we affirm the trial court's resentencing decision, we direct the trial court to correct the abstract of judgment to reflect defendant's custody credits as of the resentencing date.

DISPOSITION

The trial court resentencing order is affirmed, with directions.  We direct the court on remittitur to correct the abstract of judgment to reflect the court's custody credits ruling, and to then forward a copy of the corrected abstract of judgment to the CDCR.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

LEE

J.

We concur:

RAMIREZ

P. J.

RAPHAEL

J.